# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| CAROL J. EBLEN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:18-CV-00297-DGK |
| CITY OF KANSAS CITY, MISSOURI, et al., | ) ) ) |
| Defendants. | ) |

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS, GRANTING PLAINTIFF'S MOTION TO AMEND THE COMPLAINT, AND REMANDING CASE

Pro se Plaintiff is a ninety-year old widow who is suing the City of Kansas City, Missouri, (the "City"), various city employees, the City Mayor, and a City Council member, for claims arising out of her efforts to connect her home to the City's sewer system. Plaintiff alleges Defendants violated her constitutional and civil rights and breach their contract with her.

Now before the Court is Defendants' motion to dismiss for failure to state a claim (Doc. 6). As explained below, the motion is GRANTED IN PART. Because the Court dismisses the federal claims and only a state-law claim remains, the Court exercises its discretion and REMANDS this case the Circuit Court of Jackson County, Missouri for all further proceedings.[1]

## Background

Taking Plaintiff's allegations as true and drawing all reasonable inferences in her favor, the Court finds the facts to be as follows.

Plaintiff is a ninety-year old widow who owns a home at 6205 NW Westwood Lane, in Kansas City, Missouri, located at the corner of Westwood Lane and NW 63rd street, in block 6 of

---

[1] Also pending is Plaintiff's motion for a second Rule 26f conference (Doc. 17). That motion is DENIED.

the Breen Hills neighborhood. Pl's Cmpl. (Doc. 1-1 at ¶ 1). She has lived in that home since at least 1980. *Id.*

Prior to the acts which led to this lawsuit, all of the homes in the Breen Hills neighborhood utilized a septic system because there was no available City sewer system. In 1979, residents of Breen Hills voted to establish a sewer district. The vote passed, establishing sewer district 15075. *Id.* at ¶ 1.[2]

As a result of the newly established sewer district, each resident was assessed a portion of the sewer project costs. Residents of Breen Hills who voted for the sewer project paid a special assessment and could then chose to connect to the City's sewer, or they could chose to remain on their septic systems and connect at a later date. *Id.* at 39. Those who voted against the sewer project, had a lien attached to their property for the amount of the special assessment that became payable at the time the resident chose to connect to the City sewer system. *Id.* at ¶ 8.

Plaintiff alleges the sewer construction project included a sewer main beneath NW 63rd street and stub connections for those who voted in favor of the sewer district and paid the assessment.[3] A stub is a connector that residents use to connect their homes to the sewer main. *Id.* at ¶¶ 1, 2. Those who voted against the sewer project were not given a stub. *Id.* at ¶¶ 9, 11.

On January 31, 1983, Plaintiff paid $3,848.60, her portion of the special assessment, and signed a sewer easement to the City.

---

[2] Sewer Declaration of Necessity 4536 was adopted and made a part of the City's record on December 1, 1980. *Id.* at 33. The Declaration of Necessity is the authorizing document for constructing the sewers in Sewer District 15075 and was established under City Ordinance No. 50348, passed on May 8, 1979.

[3] Plaintiff attaches a design map of sewer district 15075 and alleges this map indicates the costs of stubs were included in the sewer project's construction costs. Plaintiff claims the design maps lists stubs as "essential appurtenances." *Id.* at ¶ 17; *Id.* at 44, 45. Pages 44 and 45 are nearly illegible to the Court, however, for purposes of this motion, the Court accepts as true Plaintiff's allegations regarding the content of these documents as alleged in ¶ 27.

Construction of sewer district 15075 began around 1980 but was stalled when the original contractor went out of business. The project was completed in 1982 by a second contractor. *Id.* at 34. Plaintiff alleges that all of her neighbors who voted in favor of the sewer project were given a stub to the sewer main but that she was not. She implies that her property could have been missed during the time the project transitioned to the new contractor.

Plaintiff alleges the sewer project created three categories of residents: (1) those who paid the assessment and connected to the City sewer at the time of construction; (2) those who paid the assessment but did not connect to the City sewer; and (3) those who did not pay the assessment. *Id.* at ¶ 10. Plaintiff alleges Category One residents were labeled "on sewer" and as such, the City billed Category One residents for sewer volume charges. Category Two residents were considered to have an "actual and available" connection to the sewer, i.e. a stub, but were treated as "on sewer" for billing purposes, and as such were billed for sewer volume charges. *Id.* at ¶¶ 2, 6, 10. Category Three residents had no "actual and available", i.e. no stub, connection to the sewer and thus, were exempted from paying sewer volume charges. *Id.* at ¶¶ 8, 11.

Plaintiff alleges that the public contract[4] made between the City and the customers of sewer district 15075, required residents in Category Two to pay sewer volume charges, even though they were not connected to the sewer. *Id.* at ¶ 6. Plaintiff alleges this charge was part of the consideration of the contract. The benefit of the bargain being that Category Two residents had a stub available to them, making connecting to the sewer a less intrusive process than those without access to a stub.

In 2012, the City implemented a change to its sewer fees imposing a sewer service charge, a flat fee, for those with an "actual and available" connection to the sewer system. *Id.* at ¶ 7; *Id.*

---

[4] She actually alleges there were two contracts, one with Category One and Two residents and one with Category Three residents. *Id.* at 39.

3

at 24 (purporting to be Kansas City Ordinance 60-2, with an effective date of May 1, 2014). Those without sewers available for connection were exempt from the new sewer service charge. *Id.* at 24 (purporting to be Kansas City Ordinance 60-5, with an effective date of May 1, 2014). Plaintiff alleges the City defines "actual and available" as a sewer connection abutting or adjoining the property and within 200 feet of the building served. *Id.* at ¶ 12; *Id.* at 26, 28 (defining available connection to a public sewer for purposes of obtaining a permit). This definition imposes the new sewer service charge on all categories of residents. *Id.* ¶¶ 12, 13.

From the time she paid the special assessment for the sewer project in Breen Hills, Plaintiff believed she had a stub connection to the sewer main at the edge of her property line, at the corner of Westwood Lane and NW 63rd Street. Reinforcing this belief was that she paid sewer volume charges each month since 1983. She believed she was required to pay these charges under the contract because she was an individual who had a stub available.

From 1983 when construction of the sewer was complete until March 2017, Plaintiff remained on her septic system because it was in good working order. In March 2017, her septic system began having problems and Plaintiff decided to connect to the City's sewer system. She hired a plumber to dig up her yard and install a lateral line connecting her home's sewer drain to the sewer main via the stub connection. *Id.* at ¶ 17. Plaintiff's plumber was unable to locate the stub where Plaintiff believed it was located. After some research, the plumber determined she did not have a stub and in order to connect to the City's sewer she would need to install a stub connection which involved excavating NW 63rd Street, a public right of way. *Id.* at ¶ 17. The cost of this effort was estimated at $10,000.

Plaintiff contacted the City's Water Department for an explanation of the missing stub. The Water Department confirmed there was no stub and stated that the sewer project for her sewer

4

district never included a stub for residents. The Water Department stated that if Plaintiff wanted to connect to the sewer, she would need to hire a master plumber, request the proper permits to access the main in the public right of way, and pay for all construction costs. *Id*. at 33. Plaintiff then contacted others within the City because she believed this information was contrary to the original agreement made with the residents of sewer district 15075. *E.g.*, *Id.* at ¶ 18.

Plaintiff alleges the individual defendants lied when they stated construction of sewer district 15075 never included private connections. *E.g.*, *Id.* at ¶¶ 18, 19, 20. She also alleges that the individual defendants conspired with each other to give her this false information. *Id.* at ¶¶ 21, 27, 34, 38.

In researching Plaintiff's water account, the City confirmed Plaintiff's statements that she had been billed, and was paying sewer volume charges each month. The City believed this was in error because she was not connected to the City's sewer system. The City researched Plaintiff's account back to May 7, 2004, the earliest its billing system permitted. *Id.* at 37. The City sent Plaintiff a check for $1,574.08, a refund of the sewer volume charges from May 7, 2004. Plaintiff returned the check to the City. As a result, the City applied a credit to Plaintiff's water account. *Id.* at ¶ 35. Plaintiff alleges these sewer volume charges are not an error and that she is required to pay these fees under the sewer district contract and as a Category Two resident. *Id.* Plaintiff alleges the City is attempting to re-classify her breach of contract issue as a billing error. *Id.*

Plaintiff asserts at least three claims: (1) violation of 42 U.S.C. § 1983 by the City and City employees; (2) conspiracy to deprive her of equal protection under 42 U.S.C. § 1985(3) by City employees; and (3) breach of contract by the City and City employees.

She also seems to assert a claim surrounding the sewer service charge. Plaintiff complains that the credit on her account prevents her from challenging the sewer service charge which she

believes is an illegal charge because it was codified into a City ordinance through an improper or procedurally deficient manner. *Id.* at ¶¶ 37, 47, 51. While she asserts she believed she was a Category Two customer with a stub and responsible for sewer service charges, now that she knows she does not have a stub, she claims she is a Category Three customer. She claims that because she has no "actual or available" connection to the sewer, she should be exempt from all sewer charges under Ordinance 60-5. *Id.* at 38. In believing the exemption in Ordinance 60-5 applies to her, she challenges the City's definition of "available connection" as it applies to Ordinance 60-5. *Id.* at ¶¶ 39, 43.

Plaintiff seeks at least $10,000 to excavate the private right of way to connect her home to the City's sewer. *Id.* at ¶ 48. She also suggests the City refund the $3,848.60 special assessment that she paid in 1983, with interest. *Id.* at ¶ 50. Additionally, she seeks a refund of the sewer service charge she alleges she has been billed since 2012. *Id.* at ¶ 52. Finally, she seeks an injunction preventing the City from charging her the sewer service charge. *Id.*

Plaintiff filed her lawsuit in Jackson County, Missouri and Defendants removed to this Court under federal question jurisdiction. Defendants move to dismiss the claims against them under 12(b)(6) on the basis that the complaint does not plead sufficient facts to state a claim for relief, and that the individual defendants are immune from suit (Doc. 9). Also pending before the Court is Plaintiff's motion to amend her complaint (Doc. 11).

**Standard**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. When considering a Rule 12(b)(6) motion, the court assumes the factual allegations of a complaint are true and construes the facts in favor of the plaintiff. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). To avoid dismissal, the complaint must include "enough facts to state a

6

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Because Plaintiff is pro se, the Court is bound to liberally construe her filings in order to do substantial justice. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

## Discussion

### I. Plaintiff's motion to amend her complaint is GRANTED.

After the motion to dismiss was fully briefed, Plaintiff filed a motion to amend her complaint. The motion seeks to add a paragraph to Count Two that alleges others believe the City's Water Department billing practices violate the 14th Amendment of the United States Constitution. (Doc. 11 at 1).

A party may amend its pleading once as a matter of course within twenty-one days after service of a 12(b) motion. Fed. R. Civ. P. 15(a). "An amended complaint supercedes an original complaint and renders the original complaint without legal effect." *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000). However, construed liberally, the Court assumes Plaintiff intends the amended complaint to supplement the original complaint. *See, e.g.*, *Ford v. Donovan*, 891 F.Supp.2d 60, 62 (D.D.C. 2012) ("Instead of superceding his original Complaint, as a typical Amended Complaint does, this later pleading supplements it. Given his *pro se* status, the Court will treat the combined pleadings as one joint Complaint."). Further, an amended complaint generally renders moot a motion to dismiss. *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002).

Defendants served their motion to dismiss under Rule 12(b)(6) on May 24, 2018, and Plaintiff filed her motion to amend on May 31, 2018, within the twenty-one day timeframe. Accordingly, Plaintiff's motion to amend her complaint is GRANTED. Further, the Court considers Plaintiff's proposed amendment in her motion together with her original state court petition as the operative complaint. *See Williams v. Aldridge*, No. 6:13-CV-6004, 2014 WL 504874, at *2 (W.D. Ark. Feb. 7, 2014) (construing together pro se plaintiff's complaint and amended complaint). Finally, the additional statements Plaintiff adds through her motion to amend her complaint do not affect the pending motion to dismiss. Thus, Defendants' motion to dismiss is not moot.

## II. Defendants' motion to dismiss the individual defendants is GRANTED.

Plaintiff's lawsuit lists nine city employees as defendants. It isn't completely clear from the complaint which counts are asserted against which of these nine individuals. Plaintiff does not indicate which individual is responsible for which alleged wrong, or who was specifically involved in each of the alleged wrongful acts. However, it is clear from the face of the complaint that she is suing these individuals for acts taken in their official capacity.

As explained below, the claims against the individual defendants fail as a matter of law. Because the Court finds the individual defendants are immune from suit, the individual defendants are dismissed.

### A. The federal claims against the individual defendants fail as a matter of law.

"A suit against a governmental actor in his official capacity is treated as a suit against the governmental entity itself. *Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 674 (8th Cir. 2007). The city employees are sued for acts taken in their official capacity, and as such, this suit is treated as one against the City. Because the City of Kansas City, Missouri is a named party, the

individual employees are dismissed as to the claims under federal law. *See Neighborhood Enterprises, Inc. v. City of St. Louis, Mo.*, No. 4:07CV1505 HEA, 2007 WL 3312074, at *5 (E.D. Mo. Nov. 5, 2007), *rev'd on other grounds* 540 F.3d 882 (8th Cir. 2008) (dismissing individual board members when sued in their official capacity because the board was a named party in the lawsuit).

Further, municipal legislators also have absolute immunity from liability for damages under 42 U.S.C. § 1983 while acting in their official legislative capacity. *Gorman Towers, Inc., v. Bogoslavsky*, 626 F.2d 607 (8th Cir. 1980). To the extent Plaintiff asserts her § 1983 claim against the Mayor and City Council member, this claim is barred because the allegations stem from actions taken in these defendants' legislative capacity.

**B. The breach of contract claim against the individual defendants is barred by the doctrine of official immunity.**

To the extent Plaintiff asserts her breach of contract claim against the individual defendants, the Court finds this claim is barred by the doctrine of official immunity.

The doctrine of official immunity applies to all public officers acting within the scope of their authority. *Brummit v. Springer*, 918 S.W.2d 909 (Mo. Ct. App. 1996). Under the doctrine of official immunity, public officers are not personally liable for injuries arising from their discretionary acts, functions, or omissions. *See Kanawaga v. State by and through Freeman*, 685 S.W.2d 831, 835 (Mo. 1985).

Here, Plaintiff's allegations involve the individual defendants acting in their official capacities as the Mayor, City Council Member, and city employees. The facts point to the individual defendants exercising their discretion in responding to Plaintiff's inquiries, crediting her water bill, and asserting no sewer stub existed for her property. Accordingly, all individual defendants are entitled to official immunity for the state-law breach of contract claim.

### C. Plaintiff's claim regarding the legality of the sewer service charge against the Mayor and City Council member is dismissed.

Plaintiff seems to allege that the sewer service charge that was created in 2012 was enacted in violation of the law. However, as to the Mayor and City Council member, this claim is barred by absolute legislative immunity.

Persons enacting municipal legislation are entitled to absolute immunity from liability for passage of municipal ordinances. *Owen v. City of Independence*, 445 U.S. 622, 637, (1980); *Gorman Towers,* 626 F.2d at 611-12. In regard to legislative acts, such as the passing of an ordinance, absent an allegation that those involved in the passage of the ordinance were not acting in their official capacities, there is absolute immunity. *State ex rel. Casey's General Stores, Inc. v. Louisiana*, 734 S.W.2d 890, 896 (Mo. Ct. App. 1987).

Here, Plaintiff complains that the sewer service charge was enacted in a procedurally improper manner. Establishing a service charge through a city ordinance and defining exemptions is a legislative activity. *See Bogan*, 523 U.S. at 54-55. There is no allegation those who passed the complained of ordinance were not acting in their official capacities. Accordingly, the Mayor and City Council member are immune from suit as it relates to the ordinances for the sewer service charge.

### III. Defendants' motion to dismiss the § 1983 claim against the City is GRANTED.

Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from: (1) an "official municipal policy," *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); (2) an unofficial "custom," *id*.; or (3) a deliberately indifferent failure to train or supervise, *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). A policy and a custom are not the same thing. "[A] 'policy' is an official policy, a deliberate choice of a guiding principle

or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating: "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation." *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014).

A municipality cannot be held liable solely because it employs a tortfeasor. *Id* at 691 (municipality cannot be held liable under § 1983 on theory of respondent superior). Nor can a municipality be held liable under § 1983 for an injury inflicted solely by its employees or agents. *Id* at 694. A municipality's liability under § 1983 can only occur when the government's policy and custom inflicts the complained of harm. *Id* at 694.

Here, Plaintiff does not allege whether she is pursuing her claim under a 'policy' or 'custom' theory. Additionally, Plaintiff does not identify which policy or custom was the driving force behind the alleged constitutional violations. Further, Plaintiff does not allege there was a continuing, widespread, pattern of unconstitutional conduct, and deliberate indifference by policy makers. Thus, Plaintiff's § 1983 claim against the City is dismissed.

## IV. Defendants' motion to dismiss the § 1985 claim is GRANTED.

To sustain a claim of conspiracy under 42 U.S.C. § 1985(3) the complaint must show: (1) "some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action," *Griffin v. Breckenridge*, 102, 91 S. Ct. 1790, 1798, (1971); and (2) that the

conspiracy "aimed at interfering with rights" that are "protected against private, as well as official, encroachment," *Carpenters v. Scott*, 463 U.S. 825, 833 (1983). Additionally, a § 1985(3) conspiracy "for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws," requires an intent to deprive persons of a right guaranteed against private impairment. *See Id.* at 833-34.

Plaintiff's complaint only states in a conclusory fashion that Defendants conspired together. It does not allege any racial or class-based discrimination, nor does it allege that a protected right guaranteed to her was impaired by Defendants' conduct. Finally, Plaintiff does not allege the requisite intent as required to state a claim under § 1985(3). Accordingly, Plaintiff's § 1985(3) claim is dismissed.

### V. Defendants' motion to dismiss the breach of contract claim against the City is DENIED.

Under Missouri law, to state a claim for breach of contract the plaintiff "must establish the existence of a valid contract, the rights of plaintiff and obligations of defendant under the contract, a breach by defendant, and damages resulting from the breach." *Lucero v. Curators of Univ. of Mo.*, 400 S.W.3d 1, 5 (Mo. Ct. App. 2013). Therefore, a plaintiff must "identify which rights or obligations [the defendants] breached under the contract in order to establish a claim for breach of contract." *See id.*

Plaintiff alleges the City made a contract with the residents of sewer district 15075 in that the City would install a sewer main and a stub for residents who voted in favor of the sewer project. In return, those residents would pay a special assessment and pay sewer volume charges until they connected to the City's sewer system. In addition to these allegations, Plaintiff attached documents that she asserts demonstrate such an agreement exists. Plaintiff alleges the City breached that contract when it did not provide her a stub even though she paid the assessment and the sewer

volume charges. She alleges she was damaged in the amounts of: (1) the sewer volume charges she alleges she paid from 1983 until the city applied a $1,574.08 credit to her account; (2) the sewer service charge she paid from 2012 until present because she does not have an "actual or available" sewer connection; and (3) approximately $10,000, the cost to install a stub and connect her home to the City's sewer. The Court finds Plaintiff has alleged the elements of a breach of contract claim against the City.

**VI.     This case is remanded to the Circuit Court of Jackson County, Missouri.**

A district court may decline to exercise supplemental jurisdiction over state law claims where the court "has dismissed all claims over which it had original jurisdiction." 28 U.S.C. § 1367(c)(3). When a district court dismisses the federal claims, it retains discretion "to either remand the state law claims or keep them in federal court." *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 357 (1988) ("We conclude that a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate."). In making this determination, the district court's "discretion should be guided by considerations of judicial economy, convenience, and fairness to the litigants." *Id.; see also Royster v. Nichols*, No. 08-141-CV-W-FJG, 2011 WL 4601038, at *2 (W.D. Mo. Oct. 3, 2011) (retaining jurisdiction over remaining state law claims where the parties had engaged in significant discovery and filed numerous motions).

Here, Plaintiff filed her case in state court and Defendants removed to this Court on the basis of federal question jurisdiction. At that time, the Court had supplemental jurisdiction over the state-law breach of contract claim. At this juncture, all federal claims have been dismissed and only the breach of contract claim remains. This lawsuit is still in its beginning stages, a scheduling order has not been entered, and discovery has not yet begun. Considering judicial economy,

convenience, and fairness to the litigants, the Court exercises its discretion to remand Plaintiff's state-law breach of contract claim to the state court this case originated from. Accordingly, the case is remanded back to the Circuit Court of Jackson County, Missouri.

## Conclusion

Plaintiff's motion to amend her complaint (Doc. 11) is GRANTED. Defendants' motion to dismiss (Doc. 6) is GRANTED IN PART. All claims against the individual defendants are DISMISSED. Additionally, the claims arising under 42 U.S.C. §§ 1983 and 1985(3) against the City of Kansas City, Missouri are DISMISSED. Defendants' motion is denied as to the breach of contract claim against the City of Kansas City, Missouri. Further, this case is REMANDED to the Circuit Court of Jackson County, Missouri for all further proceedings.

**IT IS SO ORDERED.**

Date: July 18, 2018              /s/ Greg Kays
                                 GREG KAYS, CHIEF JUDGE
                                 UNITED STATES DISTRICT COURT